UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MYESHIA S. AMBROSE-FRAZIER,**<br>    **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-1324** |
| **HERZING INC., ET AL.,**<br>    **Defendants** | **SECTION: "E" (3)** |

## ORDER AND REASONS

Before the Court is Plaintiff's Motion for Appeal/Review of Magistrate Judge's Ruling on her motion to compel production of the notes of Lisa Baiocchi.[1]

## BACKGROUND

This is a Title VII employment discrimination case. Plaintiff Myeshia S. Ambrose-Frazier ("Ambrose-Frazier") filed this action against Herzing, Inc. and Herzing University, Ltd. (collectively, "Herzing") on April 23, 2015.[2] Ambrose-Frazier, a black female, alleges she began working for Herzing on December 6, 2006, "and worked without incident" until Jason Morgan ("Morgan"), a white male, became Ambrose-Frazier's supervisor.[3] The complaint alleges that Morgan "exhibited strange and alienating behavior toward black female employees at Herzing."[4] Soon after becoming Ambrose-Frazier's supervisor, Morgan announced there would be lay-offs, listing both white and black employees for termination, but ultimately laid off "mostly black employees."[5]

---

[1] R. Doc. 55.
[2] R. Doc. 1.
[3] R. Doc. 40 at ¶¶ 6, 7.
[4] *Id.* at ¶ 8.
[5] *Id.* at ¶ 9.

1

Ambrose-Frazier alleges she was subject to intentional race discrimination and "suffered a severe and pervasive hostile work environment"[6] and was treated differently than other similarly situated non-black employees.[7] She alleges that when Ambrose-Frazier complained about the "blatant race discrimination and harassment[,] . . . she was retaliated against by being written up and terminated."[8] She avers she complained of the harassment and retaliation but Herzing did not take preventive or corrective action.[9]

Ambrose-Frazier filed this suit alleging claims of discrimination, retaliation, and harassment alleging harassment on the basis of her sex and race, in violation of Title VII of the Civil Rights Act[10] and 42 U.S.C. § 1981. She seeks damages for loss of wages and earning potential, severe emotional distress, pain and suffering, and great bodily injury, as well as attorney's fees and costs, interest, and penalties.[11]

On February 3, 2016, Ambrose-Frazier filed a Motion to Compel and/or In Camera Inspection regarding her request for production of "any statements in any form obtained from any person that is not privileged under law regarding any fact pertaining to the injury of plaintiff."[12] In her motion to compel, Ambrose-Frazier noted, "The documents requested are the notes of the investigation into Plaintiff's claims of discrimination."[13] Herzing objected to the request to that extent it sought "attorney-client communications and/or work product created in anticipation of litigation"[14] and filed an opposition to Ambrose-Frazier's motion to compel on February 11, 2016.[15]

---

[6] *Id.* at ¶ 11.
[7] *Id.* at ¶ 15.
[8] *Id.* at ¶ 11.
[9] *Id.* at ¶ 14.
[10] 42 U.S.C. § 2000e et seq.
[11] R. Doc. 40 at ¶ 16.
[12] R. Doc. 34 at 1.
[13] R. Doc. 34-1 at 2.
[14] R. Doc. 34 at 1.
[15] R. Doc. 43.

Herzing provided Ambrose-Frazier with certain documents, including notes written by Lisa Baiocchi. Baiocchi and Brian Olson, another Herzing employee, conducted interviews of Ambrose-Frazier and eight other employees to investigate Ambrose-Frazier's allegations of employment discrimination.[16] Herzing redacted several lines of Baiocchi's notes,[17] contending the redacted portions contained her "mental impressions and evaluations of the information learned during these interviews [that] were plainly created in anticipation of litigation."[18]

Magistrate Judge Knowles held an oral hearing on the motion to compel on February 17, 2016, and subsequently ordered Herzing to produce certain documents to the Court for an *in camera* inspection.[19] Judge Knowles ultimately denied Ambrose-Frazier's motion to compel, finding that the redacted portions of Baiocchi's interview notes were mental impressions protected by the work-product privilege.[20]

On February 26, 2016, Ambrose-Frazier filed a motion for review of Judge Knowles' order, seeking an order compelling production of Biaocchi's notes.[21] Herzing filed an opposition on March 2, 2016.[22] On March 3, 2016, Herzing filed an *ex parte* motion to expedite consideration of Ambrose-Frazier's motion for review.[23]

## STANDARD OF LAW

A magistrate judge's non-dispositive order may be set aside only if it is clearly erroneous or contrary to law.[24] As other courts in this District have summarized: "Under

---

[16] R. Doc. 43 at 5; R. Doc. 43-1.
[17] *See* R. Doc. 43-2 at 9–13 for the redacted version of Baiocchi's notes that Herzing provided to Ambrose-Frazier.
[18] *Id.*
[19] R. Doc. 53 at 1.
[20] *Id.* at 6–8.
[21] R. Doc. 55.
[22] R. Doc. 56.
[23] R. Doc. 57.
[24] FED. R. CIV. P. 72(a); *Moore v. Ford Motor Co.*, 755 F.3d 802, 806 (5th Cir. 2014).

this standard, factual findings are reviewed for clear error, which is present when the reviewing court upon examination of the entire evidence is left with the definite and firm conviction that a mistake has been committed. Conclusions of law should be overturned when the magistrate fails to apply or misapplies relevant statutes, case law, or rules of procedure. For issues that are committed by law to a judge's discretion, such as the resolution of discovery disputes, the magistrate's rulings are reviewed for abuse of discretion."[25]

## DISCUSSION

Judge Knowles found, and Herzing maintains,[26] that the redacted portions of Baiocchi's notes are protected by the work-product doctrine.[27]

The work-product doctrine protects from disclosure materials prepared by or for an attorney in anticipation of litigation,[28] including the attorney's research, analysis of legal theories, and mental impressions.[29] In the Fifth Circuit, "the privilege can apply where litigation is not imminent, 'as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation.'"[30] "Factors that courts rely on to determine the primary motivation for the creation of a document include the retention of counsel and counsel's involvement in the generation of the document and

---

[25] *Energy Intelligence Grp., Inc. v. Canal Barge Co.*, No. 12-2107, 2014 WL 201698, at *1 (E.D. La. Jan. 17, 2014) (citations omitted). *See also Territa v. Oliver*, No. 11-1830, 2013 WL 6490338, at *1 (E.D. La. Dec. 10, 2013); *Kiln Underwriting Ltd. v. Jesuit High Sch. of New Orleans*, No. 06-4350, 2008 WL 4724390, at *1 (E.D. La. Oct. 24, 2008); *Bolding v. C.I.R.*, 117 F.3d 270, 273 (5th Cir. 1997).
[26] R. Doc. 56 at 6–8. *See also* R. Doc 43 at 2–8.
[27] R. Doc. 53 at 7.
[28] *See* FED. R. CIV. P. 26(b)(3). *See also Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991); *S. Scrap Material Co. v. Fleming*, No. 01-2554, 2003 WL 21474516, at *5 (E.D. La. June 18, 2003); *Hickman v. Taylor*, 329 U.S. 495 (1947).
[29] *Dunn*, 927 F.2d at 875.
[30] *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000) (quoting *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982)).

4

whether it was a routine practice to prepare that type of document versus whether the document was instead prepared in response to a particular circumstance."[31]

The work-product doctrine "is not an umbrella that shades all materials prepared by a lawyer, however."[32] Materials created in the ordinary course of business are excluded from the work-product privilege.[33] "If the document would have been created regardless of whether litigation was also expected to ensue, the document is deemed to be created in the ordinary course of business and not in anticipation of litigation."[34] The mere possibility that litigation may result is not determinative.[35] "If in connection with an accident or an event, a business entity in the ordinary course of business conducts an investigation for its own purposes, the resulting investigative report is produceable in civil pre-trial discovery."[36]

Herzing has raised the *Faragher-Ellerth* affirmative defense in this litigation.[37] Under the *Faragher-Ellerth* defense, "an employer will not be vicariously liable for harassment by a supervisor if it can show: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."[38] Generally, an employer may satisfy the first prong of the *Faragher-Ellerth* defense by demonstrating

---

[31] *Motion Indus., Inc. v. Superior Derrick Servs.*, LLC, No. 15-1958, 2016 WL 760776, at *5 (E.D. La. Feb. 26, 2016) (citing *Piatkowski v. Abdon Callais Offshore, L.L.C.*, No. 99-3759, 2000 WL 1145825, at *2 (E.D. La. Aug. 11, 2000)).
[32] *El Paso Co.*, 682 F.2d at 542.
[33] *Id.*
[34] *Motion Indus.*, 2016 WL 760776, at *5 (citing *Piatkowski*, 2000 WL 1145825, at *2).
[35] *Id.*
[36] *Id.* (quoting *Carroll v. Praxair, Inc.*, No. 05-307, 2006 WL 1793656, at *2 (W.D. La. June 28, 2006)).
[37] *See* R. Doc. 54 at 1–2.
[38] *E.E.O.C. v. Boh Bros. Const. Co.*, 731 F.3d 444, 462 (5th Cir. 2013) (quoting *Watts v. Kroger Co.*, 170 F.3d 505, 509–10 (5th Cir. 1999)) (internal quotations omitted).

that (1) it has a harassment policy that was promulgated to employees and properly implemented, and (2) if an employee makes a complaint under that policy, the employer conducts a prompt investigation.[39]

Ambrose-Frazier argues that because Herzing raises the *Faragher-Ellerth* defense, Herzing "necessarily put at issue any notes from any investigation of the allegations of harassment, even if those notes were made by an attorney who could otherwise utilize the work product doctrine to shield the notes from discovery."[40]

The third defense in Herzing's answer states as follows:

> Herzing maintained, implemented and enforced adequate and reasonable policies, practices and procedures, and provided training, posted notices and circulated communications to Herzing employees regarding unlawful or wrongful discrimination, harassment and retaliation in the workplace, including but not limited to policies, practices and procedures to prevent, investigate, and promptly address and correct any actions, conduct and/or omissions involving unlawful or wrongful discrimination, harassment or retaliation.[41]

Herzing also states in its answer, "Herzing conducted a prompt and effective investigation of the complaints and violations of state and federal law, harassment, discrimination, and retaliation described in Plaintiff's Complaints, and took prompt, appropriate, and effective remedial action in response to that complaint."[42]

Herzing's employee handbook contains a complaint procedure for harassment incidents:

> Upon notification of a harassment complaint, Herzing will conduct a confidential and impartial investigation, which will include interviews with involved parties and, where appropriate, with employees who may be witnesses or have knowledge

---

[39] *Angeletti v. Lane*, No. 12-503, 2014 WL 4386063, at *4 (M.D. La. Sept. 4, 2014) (citing *Williams v. Admin. Review Bd.*, 376 F.3d 471, 478–79 (5th Cir. 2004)). *See also Moayedi v. Compaq Computer Corp.*, 98 F. App'x 335, 338 (5th Cir. 2004) (per curiam) (finding that employer was entitled to rely on *Faragher-Ellerth* affirmative defense based on its quick investigation of the plaintiff's harassment claim and the subsequent termination of the plaintiff's supervisor).
[40] R. Doc. 55-1 at 3.
[41] R. Doc. 54 at 1–2.
[42] R. Doc. 54 at 2.

of matters relating to the complaint. The complaining employee will be notified of the results of the investigation.[43]

Baiocchi's notes were created during the investigation conducted by Baiocchi and Olson of Ambrose-Frazier's allegations of workplace discrimination. The investigation, which involved interviews of Ambrose-Frazier and eight other Herzing employees "in an effort to evaluate Plaintiff's allegations," was conducted pursuant to Herzing's policy, which required an investigation of each harassment complaint.[44] Herzing argues that the interviews were not conducted in the ordinary course of business but rather "were conducted for the specific purpose of investigating Plaintiff's April 30, 2013 complaint," and "were created in response specifically to Plaintiff's discrimination complaint."[45] Judge Knowles agreed, finding that "[Baiocchi] prepared the documents in response to a particular circumstance, the accusation by plaintiff against defendants."[46] Of course, this would be true for every investigation of a harassment complaint conducted pursuant to Herzing's policy; that is, under Herzing's policy, an employee's lodging a complaint of harassment or discrimination would trigger an investigation specific to the allegations the employee made. It is clear that, pursuant to Herzing's policy, the investigation would have been conducted regardless of whether litigation ensued. As a result, the investigation was conducted in the ordinary course of business.[47] Accordingly, the work-product privilege does not apply to Baiocchi's notes.

---

[43] R. Doc. 34-5 at 5. This excerpt from Herzing's employee handbook is attached to Ambrose-Frazier's motion to compel. Herzing does not dispute the accuracy or authenticity of the excerpt.
[44] R. Doc. 43 at 5.
[45] R. Doc. 56 at 8.
[46] R. Doc. 53 at 7.
[47] *See Motion Indus.*, 2016 WL 760776, at *5 ("If the document would have been created regardless of whether litigation was also expected to ensue, the document is deemed to be created in the ordinary course of business and not in anticipation of litigation.").

The Court also finds the attorney-client privilege does not apply. The attorney-client privilege protects from disclosure communications made in confidence by a client to his attorney for the purpose of obtaining legal advice and communications from the lawyer to the client "only to the extent that these are based on, or may disclose, confidential information provided by the client or contain advice or opinions of the attorney."[48] The privilege, however, "is not a broad rule of law which interposes a blanket ban on the testimony of an attorney."[49] It does not protect a communication "simply because it is made by or to a person who happens to be a lawyer."[50] The attorney "must have been engaged or consulted by the client for the purpose of obtaining legal services or advice services or advice that a lawyer may perform or give in his capacity as a lawyer, not in some other capacity."[51]

At the time she made her notes, Baiocchi was the director of human resources at Herzing,[52] and, although she also happened to be a lawyer, she was acting in her capacity as the human resources director when conducting the investigation in accordance with Herzing's employee policy. Considering this, and in light of the Court's analysis above, the Court finds that the attorney-client privilege does not apply to Baiocchi's redacted notes from her May 10, 2013, interviews.

---

[48] *United States v. Neal*, 27 F.3d 1035, 1048 (5th Cir. 1994) (quoting Wells v. Rushing, 755 F.2d 376, 379 n. 2 (5th Cir.1985)). *See also United States v. Pipkins*, 528 F.2d 559, 562 (5th Cir. 1976).
[49] *Pipkins*, 528 F.2d at 562–63.
[50] *Levingston v. Allis-Chalmers Corp.*, 109 F.R.D. 546, 551 (S.D. Miss. 1985). *See also United States v. Evans*, 113 F.3d 1457, 1463 (7th Cir. 1997) ("The privilege extends only to communications between a client and a professional legal advisor '*in his capacity as such*.'" (emphasis in original) (citation omitted)); *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 602 (8th Cir. 1977) ("A communication is not privileged simply because it is made by or to a person who happens to be a lawyer."); *Gen. Foods Corp. v. Jay V. Zimmerman Co.*, No. 86-2697, 1988 WL 5371, at *2 (S.D.N.Y. Jan. 14, 1988).
[51] *Diversified*, 572 F.2d at 602. *See also Evans*, 113 F.3d at 1463.
[52] R. Doc. 43-2 at 20. The parties do not dispute this.

8

Even if the attorney-client or work-product privileges were to apply, Herzing waived the privileges by asserting the *Faragher-Ellerth* defense. When a Title VII defendant affirmatively invokes a *Faragher-Ellerth* defense that is premised at least in part on an internal investigation, the defendant waives the attorney-client privilege and work-product doctrine for all documents created as part of that investigation.[53]

Accordingly, the Court finds that denying the motion to compel Baiocchi's unredacted notes constituted clear error and was contrary to law.

## CONCLUSION

For the foregoing reasons;

**IT IS ORDERED** that Ambrose-Frazier's Motion for Appeal/Review of Magistrate Judge's Ruling is **GRANTED**.[54]

---

[53] *See Williams v. United States Envtl. Servs., LLC*, No. 15-168, 2016 WL 617447, at *5 (M.D. La. Feb. 16, 2016) ("Defendant has raised the *Faragher/Ellerth* affirmative defense . . . . Defendant has cited to the investigation . . . to show that it exercised reasonable care to promptly correct any harassing behavior. . . . By relying on its investigation to defend against Plaintiff's allegations, Defendant has waived any applicable privilege with respect to not only the investigative report, but any underlying documents."); *Angelone v. Xerox Corp.*, No. 09-6019, 2011 WL 4473534, at *2 (W.D.N.Y. Sept. 26, 2011) ("[T]he clear majority view is that when a Title VII defendant affirmatively invokes a *Faragher–Ellerth* defense that is premised, in whole in or part, on the results of an internal investigation, the defendant waives the attorney-client privilege and work product protections for not only the report itself, but for all documents, witness interviews, notes and memoranda created as part of and in furtherance of the investigation."); *Reitz v. City of Mt. Juliet*, 680 F. Supp. 2d 888, 892–93 (M.D. Tenn. 2010) ("But the defendant cannot use the . . . report as a sword by premising its *Faragher–Ellerth* defense on the report, then later shield discovery of documents underlying the report by asserting privilege or work-product protection."); *Musa-Muaremi v. Florists' Transworld Delivery, Inc.*, 270 F.R.D. 312, 317–18 (N.D. Ill. 2010) ("Even assuming, *arguendo*, that the documents are attorney-client privileged or protected work product, any such protection for these particular documents was waived by [the defendant's] assertion of its *Faragher/ Ellerth* defense."); *E.E.O.C. v. Outback Steakhouse of Fla., Inc.*, 251 F.R.D. 603, 611 (D. Colo. 2008) ("Courts have interpreted an assertion of the *Faragher/ Ellerth* affirmative defense as waiving the protection of the work product doctrine and attorney-client privilege in relation to investigations and remedial efforts in response to employee complaints of discrimination because doing so brings the employer's investigations into issue."); *Walker v. Cty. of Contra Costa*, 227 F.R.D. 529, 535 (N.D. Cal. 2005) ("If Defendants assert as an affirmative defense the adequacy of their pre-litigation investigation into [the plaintiff's] claims of discrimination, then they waive the attorney-client privilege and the work product doctrine with respect to documents reflecting that investigation. Where a party puts the adequacy of its pre-litigation investigation at issue by asserting the investigation as a defense, the party must turn over documents related to that investigation, even if they would ordinarily be privileged.").

[54] R. Doc.55.

**IT IS FURTHER ORDERED** that the February 24, 2016, order denying Ambrose-Frazier's motion to compel is **REVERSED**,[55] and Ambrose-Frazier's motion to compel the production of Lisa Baiocchi's unredacted notes is **GRANTED**.[56] Herzing is to produce the unredacted documents to Ambrose-Frazier by **Friday, March 10, 2016**.

**IT IS FURTHER ORDERED** that Herzing's motion to expedite consideration of the motion for appeal/review is **DENIED AS MOOT**.[57]

**New Orleans, Louisiana, this 8th day of March, 2016.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[55] R. Doc. 53.
[56] R. Doc. 34.
[57] R. Doc. 57.